# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**TAZ HARDWOODS COMPANY, INC.**

        **Plaintiff,**

        **v.**                                                          **Civil Action No. 2:03 CV 93**
                                                                                                          **(Maxwell)**

**WESTCHESTER FIRE INSURANCE COMPANY**

        **Defendant.**

## ORDER

By Order entered on January 14, 2005, the Court referred the above-styled matter to Magistrate Judge John. S. Kaull for pretrial development. On April 29, 2005, Defendant Westchester Fire Insurance Company filed three separate Motions for Summary Judgment. Defendant's First Motion for Partial Summary Judgment seeks dismissal of counts 2 and 8 of the Plaintiff's Complaint. Defendant's Second Motion for Partial Summary Judgement seeks dismissal of counts 3, 5, 6 and 7. Finally, Defendant's Third Motion for Partial Summary Judgment seeks dismissal of counts 1, 4 and 9.

On May 16, 2005, Plaintiff filed its Response to Defendant's Motions for Summary Judgement, and Defendant replied on May 27, 2005. Plaintiff filed a Sur-Response on June 9, 2005. On November 2, 2006, Magistrate Judge Kaull filed with the Court his Report and Recommendation recommending that each of Defendant's Motions for Summary Judgment be granted. Magistrate Judge Kaull's Report and Recommendation further directed the parties, in accordance with 28 U.S.C. § 636(b)(1), to file with the Clerk of Court any written objections within ten (10) days after being

served with a copy of the Report and Recommendation. On November 22, 2006, Plaintiff filed its Objections to the Magistrate Judge's Report and Recommendation.

The Court has conducted a careful, *de novo* review of the entire record before the Court in this matter. A moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. Id. at 255. The party seeking summary judgment has the initial burden to show absence of a genuine issue of material fact and the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once this burden is met, the opposing party must demonstrate that a triable issue of fact exists. Anderson, 477 U.S. at 248. In doing such, the opposing party may not rest upon mere allegations or denials, but must set forth specific facts showing a genuine issue of fact for trial. A mere scintilla of evidence supporting the case is insufficient. Id.

Upon review, the Court finds the following facts, as set forth in Magistrate Judge Kaull's Report and Recommendation, to be undisputed and material:

1) In March 2000, Taz began operation of its laser sight guided band saw equipment at its Hazelton Mill. (DE 54, Ex 1, Complaint, p. 8).

2) Westchester was licensed to conduct business in West Virginia. (DE 54, Ex 1, Complaint, p. 4).

3) January 17, 2001 Westchester issued a policy of insurance, including FPA 671 035 covering Taz's sawmill operations in Preston County, West Virginia. (DE 54, Ex 1, Complaint, p. 3).

4) On October 25, 2001, fire partially destroyed Taz's Hazelton Mill. (DE 54, Ex 1, Complaint, p. 6).

5) On October 26, 2001, Westchester retained William L. McElveen (hereinafter "McElveen"), an independent property adjuster with prior experience in adjusting sawmill and other forest product industry property losses, as its adjuster with respect to the Taz fire loss. (DE 54, Ex 2, McElveen Affidavit, pp. 2 and 6).

6) On October 27, 2001, Taz retained National Fire Adjustment Company (hereinafter "NFA") as its public adjustor. (DE 54, Ex 3).

7) McElveen visited the Taz fire scene on October 29, 2001. (DE 53, Ex 2, McElveen Affidavit, p. 6).

8) On October 31, 2001, NFA requested a $250,000 advance against payments. (DE 54, Ex 2, McElveen Affidavit, p. 7).

9) On November 11, 2001, McElveen requested Westchester issue the $250,000 advance.

10) By November 15, 2001, advance payment of $250,000 had been made under FPA 671 035 to Taz as requested by NFA. (DE 54, Ex 2, McElveen Affidavit, p. 9 and Ex.4).

11) On December 7, 2001, NFA sent McElveen a proposed lease of a temporary mill operation located at "Kingwood Pike." (DE 54, Ex 2, McElveen Affidavit, p. 10).

12) NFA requested a $500,000 general advance on December 7, 2001 which was paid to Taz on December 20, 2001. (DE 54, Ex 2, McElveen Affidavit, p.12 and Ex 5).

13) NFA provided documentation to McElveen supporting Taz's property loss claims on December 18, 2001. (DE 54, Ex 2, McElveen Affidavit, p. 11).

14) NFA requested a $750,000 general advance on February 26, 2002, which was paid to Taz on March 8, 2002, making the total advance payments $1,500,000 in the less than five months that intervened since the October 25, 2001, fire. (DE 54, Ex 2, McElveen Affidavit, p. 12 and Ex 6).

15) On May 3, 2002, McElveen wrote Dennis Niland of NFA suggesting building and personal property losses of $2,206,810.49, after deductible and depreciation leaving a suggested balance due of $706,810.49, after deduction for the already paid $1,500,000. (DE 54, Ex 2, McElveen Affidavit, p. 14 and Ex 7).

16) On May 22, 2002, Dennis A. Neas, C.P.A., (hereinafter "Neas") wrote NFA requesting records relating to income loss. (DE 54, Ex 12).

17) On May 29, 2002, Taz filed is Sworn Statement In Proof Of Loss claiming $2,285,192.41 in losses and damages leaving $780,192.41 claimed due after deduction of the deductible and advance payments already made. (DE 54, Ex 8).

18) On June 14, 2002, Taz acknowledged receipt and payment by Westchester of $245,000 as "partial payment of loss by fire to sawmill building, machinery & equipment." The payment was described as "seven (7) months at $25,000 for the sawmill and $10,000 for the equipment." On May 22, 2002, Neas wrote NFA requesting records relating to income loss. (DE 54, Ex 12).

19) On June 4, 2002, Westchester paid Taz $780,192.41. (DE 54, Ex 9).

20) On August 2, 2002, Neas again wrote NFA requesting specific types of records for specific time frames relating to income loss or, if the records were not available, a telephone call saying the records were not available. (DE 54, Ex 15).

21) On August 20, 2002, Taz acknowledged receipt and payment by Westchester of $250,000 "in partial payment of loss by fire to loss of business income." (DE 54, Ex 16).

22) On August 27, 2002, NFA wrote McElveen and Neas enclosing a summary schedule of preliminary loss of income and extra expense claim in the amount of $2,852,982; acknowledging partial payments received toward income loss in the total sum of $495,000; and requesting a $1,000,000 advance as soon as possible for Taz "to meet their obligations and stay in business." (DE 54, Ex 17).

23) On August 29, 2002, Neas e-mailed Jason@maloneyandassociates.com requesting specific documentation relative to the business loss claim. (DE 54, Ex 18).

24) On September 12, 2002, Taz acknowledged receipt and payment by Westchester of $500,000 "in partial payment of loss by fire to business income loss associated with sawmill operations" making the total payments to September 12, 2002, of $995,000. (DE 54, Ex 19).

25) On October 1, 2002, NFA wrote to McElveen advising that Taz was requesting another $1,000,000 advance against business income loss of over $2,600,000, of which $945,000 had been paid and arguing that the accountants for Westchester had several weeks to make their own evaluation and Taz was "suffering severe financial hardship as a result of this fire and its impact on its loss of profit." (DE 54, Ex 20).

26) On October 7, 2002, NFA sent McElveen a copy of "our detailed business income/extra expense claim" which NFA had sent to Neas on October 2, 2002. (DE 54, Ex 21).

27) On November 8, 2002, Neas wrote to NFA detailing the reasons why Westchester disagreed with the 1.6 million business income and extra expense loss claim computations of Taz and invited Taz to provide documentation or additional explanations for consideration. (DE 54, Ex 22).

28) On November 14, 2002, Taz filed its sworn statement in proof of loss claiming $2,603,260.18, less payments of $995,000 for a net loss and claim of $1,618,260.18. (DE 54, Ex 23).

29) By letter dated November 19, 2002, the proof of loss was sent to McElveen with a demand for immediate payment of the $1,618,260.18 claim to alleviate financial problems "as a result of the insurance company not making good faith payments." The letter also asks McElveen to "provide a copy of your West Virginia adjusting license, as it appears that you are unfamiliar with the rules and regulations as they apply to West Virginia policyholders by your intentional refusal to make recommendations for good faith payments for losses of income and extra expenses." (DE 54, Ex 24).

30) On December 9, 2002, Westchester gave notice of its intent to consider Taz's sworn statement in proof of loss; to respond thereto; to make additional payments to the extent it had sufficient documentation to support such payments; announced it believed insufficient documentation had been submitted to warrant payment of the $1,608,260.18 claim submitted: and announced its intent to examine under oath persons from Taz who would have knowledge with respect to subjects enumerated in Exhibit A to the letter. (DE 54, Ex 25).

31) On February 3, 2003, during the examination under oath of Jason G. Jenkins, he testified that Taz's pre-fire loss production reports "were in the mill when it burned" and were not available. (DE 54, Ex 28 pp. 30-31).

32) On February 4, 2003, examination under oath of Larry Donald "Pete" Frazee (hereinafter "Frazee") was taken. Both Taz and Westchester were represented by legal counsel.

33) Frazee testified that he believed Taz had records available of the pre-fire log input as well as the pre-fire log output of the sawmill, records Westchester had been seeking from Taz since February 21, 2002, and Taz had been reporting had been destroyed by the fire or so water damaged that they were thrown away and were not available. (DE 54, Ex 25, p. 73) and (DE 53, Ex 31).

34) On February 4, 2003, during an examination under oath, Belinda S. Landon testified she prepared summaries (Quarterly Sawmill Cutting Report January to March 2001) from records that were ultimately destroyed in the fire (summaries alluded earlier in the day by Frazee and which had been located and brought to the EUO during a break on February 4, 2003). (DE 54, Ex 29, p. 4).

35) On February 24, 2003, counsel for Taz wrote counsel for Westchester as follows: "If the Neas document includes any loss analysis or settlement proposal relating to the close down of operations, the insured will treat such information as being advanced by the insurer in bad faith, and as constituting evidence of the insurer acting with unreasonable delay in analyzing and approving the claim, and in making proper payment thereon."

36) On March 3, 2003, counsel for Westchester wrote counsel for Taz outlining Westchester's difficulties in obtaining financial data for use in evaluating the loss of income claim and its efforts to obtain that information from Taz. (DE 54, Ex 26).

37) By letter dated March 27, 2003, counsel for Westchester demanded binding appraisal under its interpretation of the terms of the insurance policy covering Taz. Counsel also submitted Westchester's "most recent financial analysis from Neas that takes into account the most recent data that was obtained reflecting the actual operations of the mill pre-loss, the temporary mill during the loss period, and post-loss period operations of the mill." (DE 54, Ex 32).

38) By letter dated April 14, 2003, counsel for Taz proposed "arbitration" with respect to all issues, including coverage issues as opposed to binding appraisal reserving coverage issues. Counsel also disputed Westchester's interpretation that the appraisers were to determine the "value of the property" as opposed to "the amount of Net Income and operating expense or amount of loss." Counsel also demanded Westchester declare the specific coverage issues it was challenging. (DE 54, Ex 33).

39) By letter dated April 24, 2003, Westchester insisted on binding appraisal and rejected arbitration.

40) By letter dated May 2, 2003, counsel for Taz acknowledged Westchester's letter of April 24, 2003, and announced Taz would "participate in the appraisal process" and insisted on strict compliance with the terms of the policy with respect to that process. (DE 54, Ex 35).

41) By written agreement dated July 25, 2003, and prepared by Taz's counsel, Taz and Westchester agreed they disagreed with respect to "the amount of loss of the insured covered under the contract of insurance . . . Including but not limited to Business Income" and "the amount of Net Income and operating expense and the amount of loss" sustained by Taz in the fire under the policy in effect with Westchester; selected appraisers; agreed on an appraisal procedure and the duties of the appraisers; and that "[a] decision agreed to by any two of the appraisers or umpire of the amount of Net Income and operating expense or amount of loss, will be binding." (DE 54, Ex 37).

42) Taz filed the within civil action October 24, 2003. (DE 54, Ex 1)

43) An appraisal award was issued on December 11, 2003, in the amount of $1,650,000.00 related to the business income loss portion of the claim.

44) Westchester paid Taz $655,000.00 on December 19, 2003, representing the balance due on the $1,650,000.00 appraised business income loss portion of the claim after deduction of the $995,000.00 already paid to Taz. (DE 54, Ex 39).

In recommending dismissal of Count Two, the claim of statutory bad faith, the Magistrate Judge found that there was a difference of opinion between the parties on how the business loss income should be calculated, and that despite the difference of opinion, the Defendant advanced $995,000 against the business loss claim. The Magistrate further notes that as soon as it was apparent that they had reached an impasse, the Defendant called for an appraisal and paid the balance due, as found by the appraisal, within 8 or 9 days of the appraisal announcement. Finding that there is

no factual support for the bald allegations of statutory bad faith, the Magistrate Judge recommends dismissal.

In addressing Count Eight, the claim of common law bad faith, the Magistrate Judge cites to the Fourth Circuit case of Maher v. Continental, 76 F.3d 535 (1996), which held that the West Virginia case of Hayseeds, Inc. v. State Farm Fire & Casualty, 177 W.Va. 323, 352 S.E.2d 73 (1986) and its progeny, which establishes common law bad faith in West Virginia, applies only to disputes involving claims for property damage. Noting that there is no factual dispute that the instant dispute revolves around the valuation of the business income loss, the Magistrate Judge recommends that Count Eight also be dismissed. As Defendant's First Motion for Partial Summary Judgment As to Plaintiff's Bad Faith Claims addresses Counts Two and Eight, the Magistrate Judge recommends the Court grant Defendant's First Motion for Partial Summary Judgment.

In addressing Count Three of the Complaint, the claim of outrage, the Magistrate Judge cites to the West Virginia case of Chamberlaine & Flowers, Inc. v. Smith Contracting, Inc., 176 W.Va. 39, 42, 341 S.E.2d 414, 417 (1986), as declining to apply the tort of outrage to corporations. Accordingly, Magistrate Judge Kaull finds that as Taz is a corporation and the tort of outrage is inapplicable to it, that Count Three should also be dismissed.

In turning to Count Five of the Complaint, Plaintiff's fraud claim, the Magistrate Judge, noting that F.R.Civ.P. 9(b) requires that in averring fraud, "the circumstances constituting fraud or mistake shall be stated with particularity," finds that nothing is plead with specificity such to support a claim of fraud. Accordingly, dismissal of Count Five is also recommended.

In assessing Plaintiff's Count Six, illegally adjusting claims in West Virginia, the

Magistrate Judge restates the applicable case law, which states that while a violation of a statute is prima facie evidence of negligence, such violation must be the proximate cause of plaintiff's injury before such violation is actionable. Anderson v. Moulder, 183 W.Va. 77, 394 S.E.2d 61 (1990). The Magistrate Judge recognizes that McElveen was not properly licenced in West Virginia to adjust fire claims until December 12, 2002, nearly 14 months after he began adjusting the Plaintiff's loss in the instant matter. However, finding there to be a lack of any evidence proximately connecting any alleged damage to McElveen's failure to obtain his West Virginia adjuster's license prior to December 12, 2002, the Magistrate Judge recommends dismissal of Count Six.

In evaluating Plaintiff's claim of malice in Count Seven, the Magistrate Judge finds that there is no dispute that there was disagreement on the method of evaluating the business income loss, and that partial payment of the business loss was made nonetheless. Noting that where there is a legitimate issue effecting some material aspect of the case (i.e., a bona fide dispute as to the applicable policy limits) there can be no malice, Shamblin v. Nationwide Mut. Ins. Co., 183 W.Va. 585, 592, 396 S.E.2d 766, the Magistrate Judge finds that there is no evidence to support Plaintiff's claim that any alleged conduct of the Defendant was done with malicious intention to injure or defraud. Accordingly, dismissal of Count Seven, and the granting of Defendant's Second Motion for Partial Summary Judgment As To Plaintiff's Extra-Contractual Claims are recommended.

In turning to Count Nine, which claims a violation of the covenant of good faith and fair dealing, the Magistrate Judge cites to the West Virginia case of Elmore v. State Farm Mut. Auto Ins. Co, 202 W.Va. 430, 433, 504 S.E. 2d 893, 896 (1988), as

"recognizing a common law duty of good faith and fair dealing running from an insurer to its insured, a first-party claimant in a property damage case...." While Magistrate Judge Kaull goes on to assess the facts of the instant matter against the stated common law, he ultimately finds that, notwithstanding that discussion, "this is still an intangible loss claim not heretofore envisioned by the Court as the type of claim covered by Hayseeds." Accordingly, noting that the covenant of good faith and fair dealing is part of the common law bad faith claim which, as already discussed, does not extend to business income loss, but is limited to property loss claims, Magistrate Judge Kaull finds that Count Nine is not viable and recommends dismissal.

In recommending dismissal of Count Four, Plaintiff's negligence claim, the Magistrate Judge cites to Chamberlaine & Flower, Inc.,176 W.Va. at 42, 341 S.E.2d at 417, as stating, "[t]here is generally no tort liability for nonfeasance, or failing to do what one has contracted to do, in the absence of a duty to act apart from the contract." Finding that there is nothing to support fitting Plaintiff's claims of negligence into the exceptions noted in Chamberlaine, the Magistrate Judge recommends dismissal of Count Four. Finally, based upon all of the Magistrate Judge's aforementioned findings of fact and conclusions of law, the Magistrate Judge finds that there are no facts to support Plaintiff's breach of contract claim in Count One of its Complaint and recommends that the Court grant Defendant's Third Motion For Partial Summary Judgment As To Plaintiff's Breach of Contract Claims.

Upon examination of the report from the Magistrate Judge, it appears to the Court that the issues raised by the Defendant in its Motions for Summary Judgment, and the issues raised by Plaintiff in its response thereto, were thoroughly considered by

Magistrate Judge Kaull in his Report and Recommendation. Furthermore, upon consideration of the Plaintiff's objections, it appears to the Court that the Plaintiff has not raised any issues that were not thoroughly considered by Magistrate Judge Kaull in his Report and Recommendation.

 Plaintiff's first objection, embodied in section B of Objections of the Plaintiff to Opinion/Report and Recommendation of the Magistrate, hereinafter referred to as Plaintiff's objections, makes much of the Magistrate Judge's findings as to Plaintiff delay. Plaintiff states, "[m]uch of the basis of the recommendation in the Magistrate's Order to dismiss the entirety of the Plaintiff's civil action is driven by the error in the Court's stated perception that undue delay in [sic] is wholly attributable to Taz in the timing of the its [sic] submission of its Business Income and Extra Expense sworn statement in Proof of the Loss...." The Court has carefully reviewed the Magistrate Judge's Report and Recommendation, and while there are references to the period of time for which it took Plaintiff to submit its business income proof of loss contained therein, the Court finds that this is by no measure "much of the basis of the recommendation." In fact, upon review of the reasoning for recommending dismissal of each individual account, as earlier summarized herein, the Court finds that any delay by Plaintiff in providing its business income proof of loss is not a determinant factor for Magistrate Judge Kaull in recommending dismissal of any count. The Plaintiff makes a similar argument in section I of its objections, stating that there is error regarding the weight given by the Magistrate Judge to the records produced in February of 2003. The Court again notes that this was not a determinant factor for Magistrate Judge Kaull in recommending dismissal of any count. Accordingly, section B and section I of Plaintiff's

objections are overruled.

Turning to section C of Plaintiff's objections, Failing to Consider Material Facts in Relation to Defendant's Bad Acts and Delay, the Court again finds no merit to the objection. Even assuming the omitted facts listed by Plaintiff were considered as undisputed material facts, which the Court has done so as to consider the evidence in the light most favorable to the Plaintiff, the findings and recommendations of the Magistrate Judge would remain unchanged. Looking at those listed undisputed facts and findings made by Judge Kaull on each count, the Court finds that the addition of the Plaintiff's facts, as set forth in this objection, would have no effect on the reasoning relied upon by the Magistrate Judge in recommending dismissal of each individual count. Accordingly, section C of Plaintiff's objections is overruled.

Plaintiff's objections entitle its section D as Objection to Obvious Errors, which the Court will address with in turn. First, Plaintiff references two separate areas of the Report and Recommendation stating that the Magistrate Judge relied on cases without identifying them. Upon review, the Court finds that it is clear what cases the Magistrate Judge is citing to throughout his Report and Recommendation. The Court further finds the Plaintiff's objections in this regard to be a bit disingenuous given that both cases for which the Plaintiff refers were cases that the Plaintiff itself addressed and/or cited in Plaintiff's Response to Motions for Summary Judgment. Plaintiff next objects to the Magistrate Judge finding that Plaintiff had counsel at least by April or May 2002, stating that Plaintiff did not have the assistance of counsel until November of 2002, and further notes a typographical error. Finally, Plaintiff objects in this section to the Magistrate Judge's finding that the Plaintiff's adjusters worked with McElveen even after

discovering the licensing defect.  Plaintiff states that the Court justifies dismissal of Count Two on this fact.  Upon review of Magistrate Judge Kaull's analysis of Count Two, the Court finds that the Magistrate Judge did not justify recommending dismissal of Count Two upon this fact, and that it was not even a determinate fact at all.  The Plaintiff has not raised any genuine issues of material fact with respect to Count Two.  Perhaps defense counsel has best summed up these objections in their response to Plaintiff's objections by stating, "Taz's Objections ignore the mountain of undisputed facts reviewed by the Court and instead, focuses on red herring issues that have no material bearing on the Court's R&R."  Finding that section D of Plaintiff's objections has no bearing on the legal analysis employed by the Magistrate Judge in his Report and Recommendation, the Court hereby overrules.

The same is true for the Plaintiff's objections in section E of its objections.  Plaintiff states, "[i]n dismissing Count 9, the Court speculates on Taz' counsel's 'good reason' for not suing Westchester until October 24, 2003."  However, upon review of Magistrate Judge Kaull's sound legal reasoning for recommending dismissal of Count Nine, the Court finds that such alleged speculation had no bearing on the legal analysis provided therein, but instead, dismissal is recommended as Count Nine is a common law claim for a violation of the covenant of good faith and fair dealing, which has not been extended in West Virginia to business income loss.  Plaintiff has not raised any genuine issues of material fact with respect to Count Nine.  Plaintiff's objection is overruled.

Plaintiff next objects to the Magistrate Judge's recommendation of dismissal of

the outrage claim contained in Count Three of the Complaint. As earlier noted, the Magistrate Judge has recommended dismissal of Count Three as West Virginia case law has declined to apply the tort of outrage to corporations. Plaintiff, a corporation, raises no genuine issue of material fact in its objection to overcome the law. Accordingly, section F of its objections is overruled.

In section G of Plaintiff's objections, Plaintiff argues that <u>Hayseeds</u> common law bad faith has been extended beyond property damage in the case of <u>Marshall v. Saseen</u>, 192 W.Va. 94, 450 S.E.2d 791 (1994). The Court has carefully reviewed this matter and determined that the <u>Marshal</u> case is not sufficiently on point to extend <u>Hayseeds</u> to business income loss, such as the case at bar. In <u>Marshal v. Saseen</u>, the Court only extended <u>Hayseeds</u> to policyholders of uninsured or underinsured motorist coverage. Accordingly, the Court finds that the 1996 Fourth Circuit case of <u>Maher v. Continental</u>, 76 F.3d 535, holding that <u>Hayseeds</u> and its progeny applies only to disputes involving claims for property damage, and specifically found that it did not extend to business income loss, is still good law. Accordingly, as the instant matter involves a dispute over business income loss and not property damage, Plaintiff raises no genuine issue of material fact and its section G objection is overruled.

In section J of Plaintiff's objections, Plaintiff objects to the Magistrate Judge's recommendation of the dismissal of Count Six of the complaint, illegally adjusting claims, on the ground that determining proximate cause is a jury issue. While determining proximate cause is a jury issue, there still must first be a genuine issue of material fact to take to the jury. The Magistrate Judge found there to be a lack of any evidence proximately connecting any alleged damage to McElveen's failure to obtain his

West Virginia adjuster's license.  Upon a *de novo* review of the record before the Court, the Court agrees with Magistrate Judge Kaull.  Accordingly, Plaintiff's section J objection is overruled.

Plaintiff objects in section H to the Magistrate Judge's recommendation of dismissal of Count Four of the Complaint, the negligence count.  As stated earlier, the Magistrate Judge found that there was no duty to act apart from the insurance contract, which under the stated law, circumvents a negligence claim.  Plaintiff argues in its objection that Defendant had a statutory duty to act under the UTPA apart from its contractual duties.  However, as noted earlier, Magistrate Judge Kaull found no factual support for the bald allegations of statutory bad faith in this matter.  Upon a *de novo* review, the Court agrees.  Further, Defendant again suggests that McElveen's lack of a West Virginia adjuster's license gives rise to a negligence claim.  However, as earlier noted, a negligence claim cannot exist if proximate cause cannot be proven, and as the Court has already ruled, evidence proximately connecting any alleged damage to McElveen's failure to obtain his West Virginia adjuster's license is not present.  Plaintiff raises no genuine issue of material fact, and section H of its objections is overruled.

In Section K of Plaintiff's objections, Plaintiff states that the insurance policy required the consent of both parties to invoke appraisal.  Magistrate Judge Kaull throughly examined this issue in pages 22 to 24 of his Report and Recommendation.  Upon careful *de novo* review of the Plaintiff's contentions, the Magistrate Judge's findings, and the record before the Court, the Court finds that Magistrate Judge Kaull has throughly addressed this issue, that the Plaintiff has not raised anything new that was not throughly considered by Magistrate Judge Kaull, and that Magistrate Judge

17

Kaull has appropriately applied the undisputed facts to the law regarding this matter. Accordingly, the Plaintiff's objection in section K is overruled.

Finally, in section L of Plaintiff's objections, Plaintiff lists 18 points, which it refers to as general objections. The Court has carefully reviewed each of these 18 contentions, and finds that they are either not material to the issue before the Court of whether summary judgment is appropriately recommended in favor of Defendant, or they have already been addressed by this Order and/or Magistrate Judge Kaull's Report and Recommendation.

In conclusion, the Plaintiff has not raised any issues that were not thoroughly considered by Magistrate Judge Kaull in his very thorough Report and Recommendation. Moreover, the Court, upon an independent *de novo* consideration of all matters now before it, finds that the Report and Recommendation accurately reflects the law applicable to the undisputed facts before the Court in this action. Accordingly, the Court, adopting Magistrate Judge Kaull's Report and Recommendation, finds that the Plaintiff has not raised any genuine issues of material fact, and that the Defendant is entitled to judgment as a matter of law on each of the Counts in the Complaint, as more fully set forth in the Report and Recommendation. Accordingly, it is

**ORDERED** that Magistrate Judge Kaull's Report and Recommendation be, and the same hereby is, accepted in whole. It is further

**ORDERED** that Defendant Westchester Fire Insurance Company's First Motion for Partial Summary Judgment be, and the same hereby is, **GRANTED**. It is further

**ORDERED** that Defendant Westchester Fire Insurance Company's Second

Motion for Partial Summary Judgment be, and the same hereby is, **GRANTED**. It is further

**ORDERED** that Defendant Westchester Fire Insurance Company's Third Motion for Partial Summary Judgment be, and the same hereby is, **GRANTED**. It is further

**ORDERED** that judgment be entered in favor of the Defendant and that this civil action be, and the same hereby is, **DISMISSED** and retired from the docket of this Court.

The Clerk is hereby directed to transmit copies of this Order to all counsel of record.

**ENTER:** March  5th , 2007

                                                 **/s/ Robert E. Maxwell**
                                                 United States District Judge